## ARTICLE X THE CENTRAL OFFICE

## SECTION 10.1. THE CENTRAL OFFICE.

There is hereby established as an educational unit under the board that portion of the city university of New York which is administered centrally by the chancellor, either directly or through staff designated by and directly responsible to him/her. Such educational unit shall be known as the "central office" and shall consist of the central office staff and the staff of such other programs as are not otherwise provided for and which are not part of any of the existing senior or community colleges under the jurisdiction of the board. Persons holding central office positions shall be deemed to hold positions in the city university of New York.

## ARTICLE XI DUTIES AND QUALIFICATIONS OF TITLES IN THE INSTRUCTIONAL STAFF

## SECTION 11.1. CONDITIONS AND QUALIFICATIONS FOR APPOINTMENT AND PROMOTION.

The minimum qualifications and duties for all titles in the instructional staff (referred to herein as "title descriptions"), other than those of chancellor, senior university staff and president, shall be established by the chancellor or his/her designee For titles with faculty rank, any revisions to the title descriptions shall be approved by the board as a policy item. The chancellor or/his her designee shall establish a procedure for the approval of waivers of the minimum qualifications for titles in the instructional staff, with the exception of waivers of the minimum qualifications for faculty rank titles, which shall be approved by the board. All instructional staff title descriptions established by the Chancellor or his/her designee shall be deemed board policies for the sole purpose of the grievance procedure contained in the collective bargaining agreement between the university and the union representing the instructional staff and only in grievances brought pursuant to that grievance procedure by or on behalf of an instructional staff member represented by said union and only for the purpose of determining whether the instructional staff member is performing duties substantially different from those stated in the title description for his/her appointed title.

## SECTION 11.2. CHANCELLOR.

## A. Position Definition:

The chancellor shall be appointed by and report to the board. He/she shall be the chief executive, educational and administrative officer of the city university of New York and the chief educational and administrative officer of the senior and community colleges and other educational units and divisions for which the board acts as trustees. He/she shall be the chief administrative officer for the board and shall implement its policies and be the permanent chairperson of the council of presidents with the right and duty of exercising leadership in the work of the council. The chancellor shall have the following duties and responsibilities:

a. To initiate, plan, develop and implement institutional strategy and policy on all educational and administrative issues affecting the university, including to prepare a comprehensive overall academic plan for the university, subject to the board's approval; and to supervise a staff to conduct research, coordinate data, and make analyses and reports on a university-wide basis.

b. To unify and coordinate college educational planning, operating systems, business and financial procedures and management.

c. As to each educational unit:

1. To oversee and hold accountable campus leadership, including by setting goals and academic and financial performance standards for each campus.

2. To recommend to the board the appointment of the college president and senior campus staff.

3. To recommend directly to the board the underlying academic appointment of any president, with tenure, notwithstanding any other provisions in these Bylaws.

4. Periodically, but no less than every five years, review the performance of each college.

5. Present to the board all important reports, recommendations, and plans submitted by a college president, faculty or governance body with his/her recommendations, if any.

d. To prepare, with the advice of the council of presidents, the operating budget and the capital budget for consideration by the board and presentation to the state and the city.

e. To act as the representative of the university and its colleges with outside agencies and particularly to promote the interest and welfare of the university and its colleges with city, state and federal officials.

f. To promote a positive image of the university and to develop and enhance public and private sources of funding for the university.

g. To attend meetings of the board and its committees and to advise on all matters related to his/her duties and responsibilities.

h. To live in a residence provided for him/her by the board.

i. Nothing in this enumeration shall compromise or detract from the powers and duties of the board of trustees as defined in the state education law.

## B. Qualifications:

He/she shall have an outstanding reputation as an educational administrator, executive, and scholar, and such personal qualities as will be conducive to success as a leader of scholars and teachers and as the chief executive officer and public representative of the university.

## SECTION 11.3. SENIOR UNIVERSITY STAFF

## A.

The senior university staff shall include persons in the titles of executive vice chancellor, chief operating officer, senior vice chancellor, university provost, secretary to the board, vice chancellor, university administrator, university associate administrator, university assistant administrator, university dean, university associate dean, university assistant dean, and such other titles as the chancellor, with the approval of the board, may designate.

## B. Position Definition:

The duties and responsibilities of the senior university staff shall be to assist the chancellor in designated areas of university operations and to represent him/her when so authorized.

## SECTION 11.4. THE PRESIDENT.

## A. Position Definition:

The president, with respect to his/her educational unit, shall:

a. Have the affirmative responsibility of conserving and enhancing the educational standards and general academic excellence of the college under his/her jurisdiction. Such responsibility shall include but not be limited to the duty to recommend to the chancellor for appointment, promotion, and the granting of tenure only those persons who he/she is reasonably certain will contribute to the improvement of academic excellence at the college. These recommendations shall be consistent with the immediate and long range objectives of the college.

b. Have the power (1) to remove a department chairperson in accordance with section 9.1.c., and (2) to initiate recommendations for appointment in a department to a professorial title in accordance with section 9.5.a.

c. Be an advisor and executive agent of the chancellor and have the immediate supervision with full discretionary power to carry into effect the bylaws, resolutions, and policies of the board, the lawful resolutions of any board committees, and policies, programs, and lawful resolutions of the several faculties and students where appropriate.

d. Exercise general superintendence over the facilities, concerns, officers, employees, and students of his/her college; in consultation with the chancellor, prepare and implement the college master plan, which shall be subject to the approval of the chancellor and the board.

e. Act as chairperson of the faculty, faculty council, and the committee on faculty personnel and budget, or of equivalent bodies as established.

f. Attend meetings of the board and advise the chancellor and the board on all matters related to educational policy and practice.

g. Transmit to the chancellor recommendations of his/her faculty or faculty council on matters of curriculum and other matters falling under faculty jurisdiction.

h. Consult with the appropriate departmental and faculty committees on matters of appointments, reappointments, and promotions; take student evaluations into account in making recommendations thereon; present to the chancellor his/her recommendations thereon; notify the appropriate faculty committees of his/her recommendations to the chancellor.

i. Recommend to the chancellor an annual college budget.

j. Consult with and make recommendations to the chancellor concerning all matters of significant academic, administrative or budgetary consequence affecting the college and/or the university.

k. Present to the chancellor communications from faculties, officers, employees, or students together with any advice or recommendations of his/her own concerning the subject of such recommendations or communications.

l. Between meetings of the board, be authorized in an emergency to fill temporary vacancies in the instructional staff below the rank of professor in accordance with the method of appointment herein provided and to make such administrative arrangements and appointments as cannot well await the action of the board or its appropriate committees.

m. Report annually to the chancellor and the board, on or before December thirty-first, concerning the affairs of his/her college during the preceding academic year.

n.  Live in a residence provided for him/her by the board.

o.  Have such additional specific duties as the chancellor shall designate.

## B. Qualifications:

He/she shall have an outstanding reputation as an educational administrator; personal qualities conducive to success as a leader of scholars and teachers, and as an executive.

## SECTION 11.5. EQUIVALENCIES.

1.  a. For appointment as an assistant professor, associate professor, or full professor in a field in which there is a research PhD in general use., no other degree shall be accepted as equivalent to the PhD. unless there is also a professional doctorate in general use available in the field, in which case a college may declare either the PhD. or the relevant professional doctorate to be "preferred" for a specific appointment, or it could designate them as equally acceptable.

    b. For appointment as an assistant professor, associate professor, or full professor in fields in which the PhD. is not the terminal degree in the field, the executive vice chancellor and university provost shall prepare and make available to the colleges a list of credentials that may be accepted in lieu of the PhD. degree.

2.  In the evaluation and interpretation of equivalencies there must be a direct and specific relationship between the discipline represented and the field in which the candidate is to serve.

## ARTICLE XII SALARY SCHEDULE CONDITIONS

## SECTION 12.1. SALARY SCHEDULE CONDITIONS.

The salary of the persons employed by the board on the instructional staff shall be not less than those prescribed in the schedules approved in an agreement entered into after collective negotiations. Where a title is not covered by any collective negotiation agreement, but is payable from the city expense budget for the City University of New York, the schedule shall be as approved by the board and consented to by the city office of labor relations and the city office of management and budget. All salaries shall be subject to the following conditions:

a.  The annual increments for all positions on the instructional staff shall be added on January first of each succeeding year following completion of at least ten full months of service, except that in the higher education officer series, the annual increments shall be added on January first or July first of each succeeding year following at least eleven months of service.

b.  In schedules where annual increments are specified, the board nevertheless reserves the right to assign fixed salaries to appointees in special cases, to vote larger increments in special cases, when in its judgment the nature of the duties or the character of the services renders such action just, or to withhold annual increments from any members of the staff whose services for any year are unsatisfactory.

c.  In schedules where no annual increments are specified, the specific salary of an incumbent shall be fixed at the minimum rate, or the maximum rate, or between, by resolution of the board, action being taken with due consideration for the duties to be discharged, prevailing rates of compensation for one discharging such duties, and the qualifications, training and experience of the incumbent.

## SECTION 12.2.

Whenever any compensation, in addition to the regular annual salary, is authorized to be paid to a member of any college, university, or board staff from enterprises in any way connected with the college or university, such compensation shall not be paid or accepted unless reported to and specifically authorized by the chancellor, except for compensation being paid to the chancellor, which must be specifically authorized by the board.

## SECTION 12.3.

The compensation of temporary and other employees not on the instructional staff shall be fixed at such salaries as the board may determine except that with respect to positions for which salary schedules have heretofore been established by the board, such salaries shall be in accordance with such salary schedules as the board may establish with the approval of the mayor, or in accordance with such salary allocations as are appropriate under the career and salary plan. The board may make appointments to any position on a part-time basis with corresponding fractional salary or compensation except where prohibited by existing collective bargaining agreements.

# ARTICLE XIII INSTRUCTIONAL STAFF – MISCELLANEOUS PROVISIONS

## SECTION 13.1. TEMPORARY DISABILITY LEAVE.

a.  Members of the instructional staff who are absent because of temporary disability for more than five consecutive working days may be required to submit a medical certificate from their personal physician upon their return to work.

Where any absence because of temporary disability exceeds thirty consecutive working days, the absentee shall present a statement from his/her physician explaining the nature or his/her temporary disability and certifying that he/she is fully capable of returning to work. In the case of any such absence the college may also require an examination by a physician in its employ, or appointed by it, who shall be required to certify that the absentee is fully capable of returning to work. In cases where there is a conflict of opinion, a third physician, acceptable to the absentee and to the president of the college, shall be called in and his/her judgment shall be accepted as conclusive. In the event that it is found that the condition of such person is such that he/she is incapable of resuming his/her normal duties, such person shall apply for such additional period of leave of absence as may be necessary. Failure to make such application for an additional period of leave of absence shall be deemed neglect of duty.

b.  Leaves of absence without pay for temporary disability for periods of less than one year may be recommended by the board to the appropriate retirement system for credit as service for retirement. Increments may be recommended by the board for the period during which an employee is on leave of absence without pay for temporary disability for periods of less than one year.

## SECTION 13.2. RETIREMENT LEAVES.

Members of the New York City teachers' retirement system and members of the permanent instructional staff and lecturers (full-time) with administrative certificates of continuous employment and persons with titles in the higher education officer series who are members of any other retirement system who announce their bona fide intention to retire shall be granted a retirement leave of absence with full pay consisting of one-half of their accumulated unused temporary disability leave up to a maximum of one semester, or the equivalent number of school days. Terms and conditions relating to such retirement leave shall be governed by section 3107 of the state education law.

## SECTION 13.3. LEAVES FOR SPECIAL PURPOSES.

a.  Special leaves may be granted to members of the instructional staff for personal emergencies of not more than ten working days may be granted with pay by the president at his/her discretion.

b.  On the recommendation of the relevant departmental committee concerned with appointments, the relevant college committee and the president, the board may grant to members of the instructional staff special leaves of absence without pay for purposes such as study, writing, research, the carrying out of a creative project or public service of reasonable duration. Where a special leave without pay is for one year or longer, it shall not be credited for purposes of increment, except that increment credit may be granted when the president certifies that the leave is being taken for a project of academic, scholarly or public importance that brings honor and recognition to the college.

# ARTICLE XIV THE NON-INSTRUCTIONAL STAFF

## SECTION 14.1. NON-INSTRUCTIONAL STAFF - DEFINITION AND DUTIES.

The non-instructional staff shall consist of all positions in the classified civil service of the city university of New York, classified under one of the four jurisdictional classes - exempt, competitive, non-competitive, and labor.

## SECTION 14.2. TERMS AND CONDITIONS OF EMPLOYMENT OF NON-INSTRUCTIONAL STAFF.

Hours of employment, vacations, leaves of absence and other terms and conditions of employment for members of the non-instructional staff shall be those established by law or by resolution of the board, or by appropriate collective bargaining agreements or determinations of the comptroller of the city of New York in appropriate cases.

## SECTION 14.3. NON-INSTRUCTIONAL STAFF POSITIONS.

The qualification requirements for non-instructional staff positions shall be those established by the appropriate position specification or civil service examination announcement, or standards established by the CUNY civil service commission.

## SECTION 14.4. NON-INSTRUCTIONAL STAFF DISCIPLINARY PROCEDURES.

All non-instructional staff members whose employment is governed by a collective bargaining agreement are subject to discipline in accordance with the disciplinary procedures set forth in that agreement, as are members who are represented by a union that has agreed to use those disciplinary procedures. All other non-instructional staff members are subject to discipline in accordance with the provisions in the CUNY Personnel Rules and Regulations.

# ARTICLE XV STUDENTS

## SECTION 15.0. PREAMBLE.

Academic institutions exist for the transmission of knowledge, the pursuit of truth, the development of students, and the general well-being of society. Student participation, responsibility, academic freedom, and due process are essential to the operation of the academic enterprise. As members of the academic community, students should be encouraged to develop the capacity for critical judgment and to engage in a sustained and independent search for truth.

Freedom to learn and to explore major social, political, and economic issues are necessary adjuncts to student academic freedom, as is freedom from discrimination, as set forth in the university's non-discrimination policy.

Freedom to learn and freedom to teach are inseparable facets of academic freedom. The concomitant of this freedom is responsibility. If members of the academic community are to develop positively in their freedom; if these rights are to be secure, then students should exercise their freedom with responsibility.

## SECTION 15.1. CONDUCT STANDARD DEFINED.

Each student enrolled or in attendance in any college, school or unit under the control of the board and every student organization, association, publication, club or chapter shall obey (1) the laws of the city, state and nation; (2) the bylaws and resolutions of the board, including the rules and regulations for the maintenance of public order pursuant to article 129-a of the education law ("Henderson rules"); and (3) the governance plan, policies, regulations, and orders of the college.

Such laws, bylaws, resolutions, policies, rules, regulations and orders shall, of course, be limited by the right of students to the freedoms of speech, press, assembly and petition as construed by the courts.

## SECTION 15.2. STUDENT ORGANIZATIONS.

a.  Any group of students may form an organization, association, club or chapter by filing with the duly elected student government organization of the college or school at which they are enrolled or in attendance and with an officer to be designated by the chief student affairs officer of the college or school at which they are enrolled or in attendance (1) the name and purposes of the organization, association, club or chapter, (2) the names and addresses of its president and secretary or other officers corresponding in function to president and secretary.

    The board recognizes that students have rights to free expression and association.  At the same time, the board strongly believes that respect for all members of the university's diverse community is an essential attribute of a great university.

    Each student leader and officer of student organizations recognized by or registered with the institution, as well as those seeking recognition by the institution, must complete training on domestic violence, dating violence, stalking, and sexual assault prevention and on CUNY's Policy on Sexual Misconduct prior to the organization receiving recognition or registration.

b.  Extra-curricular activities at each college or school shall be regulated by the duly elected student government organization to insure the effective conduct of such college or school as an institution of

higher learning and for the prevention of activities which are hereafter proscribed or which violate the standards of conduct of the character set forth in bylaw 15.1. Such powers shall include:

1.   The power to charter or otherwise authorize teams (excluding intercollegiate athletics), publications, organizations, associations, clubs or chapters, and, when appropriate in the exercise of such regulatory power, the power to refuse, suspend or revoke any charter or other authorization for cause after hearing on notice.

2.   The power to delegate responsibility for the effective implementation of its regulatory functions hereunder to any officer or committee which it may appoint.

c.

1.   Any person or organization affiliated with the college may file a complaint with the chief student affairs officer if there is reason to believe that a student organization has violated any of the standards of conduct set forth in section 15.1 above.  The chief student affairs officer shall promptly notify the affected organization, investigate any complaint and report the results of that investigation along with a recommendation for appropriate action to the complainant and the student government which shall take action as it deems appropriate, except that in the case of a complaint against the student government itself, the chief student affairs officer shall report the results of the investigation and the recommendation for appropriate action directly to the president.

2.   The complainant or any student organization adversely affected pursuant to paragraph C (1) above may appeal to the president.  The president may take such action as he or she deems appropriate, and such action shall be final.

d.   Each college shall establish a student elections review committee in consultation with the various student governments. The student elections review committee shall approve the election procedures and certify the results of elections for student governments, and student body referenda.  Decisions of the student elections review committee may be appealed to the college president, whose decision shall be final.  An appeal from the decision of the student elections review committee must be made in writing to the President within ten (10) calendar days of the decision. The President shall consult with the student elections review committee and render a decision as expeditiously as possible which may affirm, reverse, or modify the decision of the student elections review committee.

e.   Student government elections shall be scheduled and conducted, and newly elected student governments shall take office, in accordance with policies of the board, and implementing regulations.

## SECTION 15.3. THE UNIVERSITY STUDENT SENATE.

There shall be a university student senate responsible, subject to the board of trustees, for the formulation of university-wide student policy relating to the academic status, role, rights and freedoms of the student. The authority and duties of the university student senate shall not extend to areas of interest which fall exclusively within the domain of the student governments of the constituent units of the university. Consistent with the authority of the board of trustees in accordance with the education law and the bylaws of the board of trustees, the university student senate shall make its own bylaws providing for the election of its own officers, the establishment of its own rules and procedures, for its internal administration and for such other matters as is necessary for its existence. The university student senate shall have the full rights and responsibilities accorded student organizations as provided in these bylaws. The delegates and

alternate delegates to the university student senate shall be elected by their respective constituencies, or by their student governments from the elected members of the respective student governments.

## SECTION 15.4. STUDENT DISCIPLINARY PROCEDURES.

## Complaint Procedures:

a.  A University student, employee, organization, department or visitor who believes she/he/it is the victim of a student's misconduct (hereinafter "complainant") may make a charge, accusation, or allegation against a student (hereinafter "respondent") which if proved, may subject  the  respondent to disciplinary action.  Such charge, accusation, or allegation must be communicated to the chief student affairs officer of the college the respondent attends.

b.  The chief student affairs officer of the college or her or his designee shall conduct a preliminary investigation in order to determine whether disciplinary charges should be preferred. The chief student affairs officer or her or his designee shall advise the respondent of the allegation against her or him, explain to the respondent and the complainant their rights, consult with other parties who may be involved or who have information regarding the incident, and review other relevant evidence. The preliminary investigation shall be concluded within thirty (30) calendar days of the filing of the complaint, unless: (i) said complaint involves two or more complainants or respondents; or (ii) said complaint involves a matter that is also under investigation by law enforcement authorities. In those cases, the preliminary investigation shall be completed within sixty (60) calendar days.  Further, if the matter has been previously investigated pursuant to the CUNY Policy on Sexual Misconduct, the chief student affairs officer shall dispense with a preliminary investigation and rely on the report completed by the Title IX Coordinator.  Following the completion of the preliminary investigation, the chief student affairs officer or designee shall take one of the following actions:

1.  Dismiss the matter if there is no basis for the allegation(s) or the allegation(s) does not warrant disciplinary action. The individuals involved shall be notified that the complaint has been dismissed;

2.  Refer the matter to mediation (except in cases involving allegations of sexual assault, stalking or other forms of sexual violence); or

3.  Prefer formal disciplinary charges.

c.  In cases involving the CUNY Policy on Sexual Misconduct, both the Complainant and Respondent may be accompanied by an advisor of their choice (including an attorney) who may assist and advise throughout the entire process, including all meetings and hearings.  Advisors may represent a party and fully participate at a hearing, but may not give testimony as a witness.

d.  In the event that a respondent withdraws from the college after a charge, accusation or allegation against a respondent has been made, and the college prefers formal disciplinary charges, the respondent is required to participate in the disciplinary hearing or otherwise to resolve the pending charges and shall be barred from attending any other unit of the university until a decision on the charges is made or the charges are otherwise resolved.  Immediately following the respondent's withdrawal, the college must place a notation on her/his transcript that she/he "withdrew with conduct charges pending."  If the respondent fails to appear, the college may proceed with the disciplinary hearing in absentia, and any decision and sanction shall be binding, and the transcript notation, if any, resulting from that decision and penalty shall replace the notation referred to above

## Mediation Conference:

e.   The college may offer the respondent and the complainant the opportunity to participate in   a mediation conference prior to the time the disciplinary hearing takes place in an effort to resolve the matter by mutual agreement (except in cases involving sexual assault, stalking and other forms of sexual violence).   The conference shall be conducted by a qualified staff or faculty member designated by the chief student affairs officer. The following procedures shall be in effect at this conference:

1.   An effort shall be made to resolve the matter by mutual agreement through such process as the mediator deems most appropriate; provided, however, that the complainant must be notified of her/his right to end the mediation at any time

2.   If an agreement is reached, the faculty or staff member conducting the conference shall report her/his recommendation to the chief student affairs officer for approval and, if approved, the complainant and the respondent shall be notified, and a written memorandum shall be created memorializing the resolution and any consequences for non-compliance.

3.   If no agreement is reached within a reasonable time, or if the respondent fails to appear, the faculty or staff member conducting the conference shall refer the matter back to the chief student affairs officer who may prefer disciplinary charges, or, if charges have been preferred, proceed to a disciplinary hearing.

4.   The faculty or staff member conducting the mediation conference is precluded from testifying at a college hearing regarding information received during the mediation conference, or presenting the case on behalf of the college.

## Notice of Charges and Hearing:

f.   Notice of the charge(s) and of the time and place of the hearing shall be personally delivered to the respondent, or sent by certified or overnight mail and email to the address appearing on the records of the college.  Notice shall also be sent in a similar manner to the complainant to the extent the charges relate to her/him/it.  The chief student affairs officer is also encouraged to send the notice of charges to any other e-mail address that he or she may have for the respondent and the complainant.  The hearing shall be scheduled within a reasonable time following the filing of the charges or the mediation conference. Notice of at least seven (7) calendar days shall be given to the respondent in advance of the hearing unless the respondent consents to an earlier hearing. The respondent is permitted one (1) adjournment as of right.  Additional requests for an adjournment must be made at least five (5) calendar days prior to the hearing date, and shall be granted or denied at the discretion of the chairperson of the faculty-student disciplinary committee.  If the respondent fails to respond to the notice, appear on the adjourned date, or request an extension, the college may proceed in absentia, and any decision and sanction shall be binding.

g.   The notice shall contain the following:

1.   A complete and itemized statement of the charge(s) being brought against the respondent including the rule, bylaw or regulation she/he is charged with violating, and the possible penalties for such violation.

2.  A statement that the respondent and the complainant have the right to attend and participate fully in the hearing including the right:

(i)   to present their side of the story;
(ii)  to present witnesses and evidence on their behalf;
(iii) to cross-examine witnesses presenting evidence;
(iv)  to remain silent without assumption of guilt; and
(v)   to be assisted or represented by an advisor or legal counsel at their expense; if the respondent or the complainant requests it, the college shall assist in finding a legal counsel or advisor.

3.  A warning that anything the respondent says may be used against her/him at a non-college hearing.

## Pre-Hearing Document Inspection:

h.  At least five (5) calendar days prior to the commencement of a student disciplinary hearing, the college shall provide the respondent and the complainant and/or their designated representative, with similar and timely access to review any documents or other tangible evidence that the college intends to use at the disciplinary hearing, consistent with the restrictions imposed by Family Education Rights and Privacy Act ("FERPA").  Should the college seek to introduce additional documents or other tangible evidence during, or some time prior to, the disciplinary hearing, the respondent and the complainant shall be afforded the opportunity to review the additional documents or tangible evidence. If during the hearing the complainant or the respondent submits documentary evidence, the chairperson may, at the request of any other party grant an adjournment of the hearing as may be necessary in the interest of fairness to permit the requesting party time to review the newly produced evidence.

## Admission and Acceptance of Penalty Without Hearing:

i.  At any time after receiving the notice of charges and hearing but prior to the commencement of a disciplinary hearing, the respondent may admit to the charges and accept the penalty that the chief student affairs officer or designee determines to be appropriate to address the misconduct. This agreed upon penalty shall be placed on the respondent's transcript consistent with subparagraphs q(19) and (20) herein. Before resolving a complaint in this manner, the chief student affairs officer must first consult with the complainant and provide the complainant an opportunity to object to the proposed resolution, orally and/or in writing. If a resolution is reached over the complainant's objection, the chief student affairs officer or designee shall provide the complainant with a written statement of the reasons supporting such resolution, and the complainant may appeal the decision to enter into the resolution to the president.

## Emergency Suspension:

j.  The president or her/his designee may in emergency or extraordinary circumstances, temporarily suspend a student pending an early hearing as provided in this bylaw section 15.4. to take place within not more than twelve (12) calendar days, unless the student requests an adjournment. Such suspension shall be for conduct which impedes, obstructs, impairs or interferes with the orderly and continuous administration and operation of any college, school, or unit of the university in the use of its facilities or in the achievement of its purposes as an educational institution. Prior to the commencement of a temporary suspension of a student, the college shall give the student oral notice

(which shall be confirmed via email to the address appearing on the records of the college) or written notice of the charges against her/him and, if she/he denies them, the college shall forthwith give the student an informal oral explanation of the evidence supporting the charges and the student may present informally her/his explanation or theory of the matter. When a student's presence poses a continuing danger to person or property or an ongoing threat of disrupting the academic process, notice and opportunity for denial and explanation may follow suspension, but shall be given as soon as feasible thereafter.  The complainant shall be notified in the event that an emergency suspension is imposed against a student, and/or when the suspension is subsequently lifted to the extent that the suspension involves the complainant in the same manner notice is given to the student.

## Faculty-Student Disciplinary Committee Structure:

k.   Each faculty-student disciplinary committee shall consist of two (2) faculty members or one (1) faculty member and one (1) member of the Higher Education Officer series (HEO), and two (2) student members and a chairperson, who shall be a faculty member. A quorum shall consist of the chairperson and any two (2) members, one of whom must be a student.  Hearings shall be scheduled promptly (including during the summers) at a convenient time and efforts shall be made to insure full student and faculty representation.

l.   The president shall select in consultation with the head of the appropriate campus governance body or where the president is the head of the governance body, its executive committee, three (3) members of the faculty of that college to receive training training upon appointment and to serve in rotation as chairperson of the disciplinary committee.  The following schools shall be required to select two (2) chairpersons:, CUNY School of Law, Guttman Community College, CUNY School of Professional Studies, and the CUNY School of Journalism. If none of the chairpersons appointed from the campus can serve, the president, at her/his discretion, may request that a chairperson be selected by lottery from the entire group of chairpersons appointed by other colleges. The chairperson shall preside at all meetings of the faculty-student disciplinary committee and decide and make all rulings for the committee. She/he shall not be a voting member of the committee but shall vote in the event of a tie.

m.   The faculty members shall be selected by lot from a panel of six (6) elected biennially by the appropriate faculty body from among the persons having faculty rank or faculty status. CUNY School of Law, Guttman Community College, CUNY School of Professional Studies, and the CUNY School of Journalism shall be required to select four (4) faculty members.  The HEO members shall be selected by lot from a panel of six (6) HEO appointed biennially by the president.  CUNY School of Law, Guttman Community College, CUNY School of Professional Studies, and the CUNY School of Journalism shall be required to select four (4) HEO's. The student members shall be selected by lot from a panel of six (6) elected annually in an election in which all students registered at the college shall be eligible to vote.  CUNY School of Law, Guttman Community College, CUNY School of Professional Studies, and the CUNY School of Journalism shall be required to select four (4) students. In the event that the student or faculty panel or both are not elected, or if more panel members are needed, the president shall have the duty to select the panel or panels which have not been elected. No individuals on the panel shall serve on the panel for more than four (4) consecutive years.  Notwithstanding the above, in cases of sexual assault, stalking and other forms of sexual violence, the president shall designate from the panels one (1) chairperson, two (2) faculty/HEO members, and two (2) students, who shall be specially trained on an annual basis, and who shall constitute the faculty-student disciplinary committee in all such cases.

n.  In the event that the chairperson cannot continue, the president shall appoint another chairperson. In the event that a seat becomes vacant and it is necessary to fill the seat to continue the hearing, the seat shall be filled from the respective faculty, HEO, or student panel by lottery.

o.  Each academic year, the chief student affairs officer, and her or his designee, shall appoint/identify one or more college employees to serve as presenters for the hearings.  This list shall be forwarded to the Office of the Vice Chancellor for Student Affairs, and the Office of the General Counsel and Sr. Vice Chancellor for Legal Affairs prior to the first day of the academic year.

p.  Persons who are to be participants in the hearings as witnesses or have been involved in preferring the charges or who may participate in the appeals procedures or any other person having a direct interest in the outcome of the hearing shall be disqualified from serving on the committee.

## Faculty-Student Disciplinary Committee Procedures:

q.  The following procedures shall apply to faculty-student disciplinary proceedings:

### Hearing:

1.   The chairperson shall preside at the hearing. The chairperson shall inform the respondent of the charges, the hearing procedures and her or his rights.

2.   All faculty student disciplinary committee hearings are closed hearings unless the respondent requests an open public hearing.  Notwithstanding such requests, the chairperson shall not permit an open hearing in cases involving allegations of sexual assault, stalking, or other forms of sexual violence.  Furthermore, the chairperson has the right to deny the request and hold a closed hearing when an open public hearing would adversely affect and be disruptive to the committee's normal operations.   In the event of an open hearing, the respondent must sign a written waiver acknowledging that those present will hear the evidence introduced at the hearing

3. After informing the respondent of the charges, the hearing procedures, and her or his rights, the chairperson shall ask the respondent to respond. If the respondent admits the conduct charged, the respondent shall be given an opportunity to explain her/his actions before the committee and the college shall be given an opportunity to respond and present evidence regarding the appropriate penalty.  If the respondent denies the conduct charged, the college shall present its case.  At the conclusion of the college's case, the respondent may move to dismiss the charges. If the motion is denied by the committee, the respondent shall be given an opportunity to present her or his defense.

4.   Prior to accepting testimony at the hearing, the chairperson shall rule on any motions questioning the impartiality of any committee member or the adequacy of the notice of the charge(s). Subsequent thereto, the chairperson may rule on the admissibility of the evidence and may exclude irrelevant, unreliable or unduly repetitive evidence. In addition, if any party wishes to question the impartiality of a committee member on the basis of evidence which was not previously available at the inception of the hearing, the chairperson may rule on such a motion. The chairperson shall exclude from the hearing room all persons who are to appear as witnesses, except the respondent and the complainant.

5.   The college shall make a record of each fact-finding hearing by some means such as a stenographic transcript, an audio recording or the equivalent. The college must assign a staff member for each hearing, with the sole responsibility of ensuring that the hearing is recorded in its entirety. No other recording of the proceedings may be permitted. A respondent who has been found to have

committed the conduct charged after a hearing is entitled upon request to a copy of such a record without cost upon the condition that it is not to be disseminated except to the respondent's representative or attorney.  In the event of an appeal, both the respondent and the complainant are entitled upon request to a copy of such a record without cost, upon the condition that it is not to be disseminated except to their representatives or attorneys.

6.   The college bears the burden of proving the charge(s) by a preponderance of the evidence.

7.   The role of the faculty-student disciplinary committee is to listen to the testimony, ask questions of the witnesses, review the testimony and evidence presented at the hearing and the papers filed by the parties and render a determination.  In the event the respondent is found to have committed the conduct charged, the committee shall then determine the penalty to be imposed.

8.   The college, the respondent and the complainant are permitted to have lawyers or other representatives or advisors act on their behalf during the pendency of a disciplinary action, which shall include the calling and examining of witnesses, and presenting other evidence.  Any party intending to appear with an attorney shall give the other party 5 (five) calendar days' notice of such representation.

9.   The chairperson of the faculty-student disciplinary committee retains discretion to limit the number of witnesses and the time of testimony for the presentations by any party and/or their representative.

10.  In the event that the respondent is charged with a sexual assault, stalking or other forms of sexual misconduct, neither the respondent nor the complainant shall be permitted to cross-examine the other directly.  Rather, if they wish to, the respondent and the complainant may cross-examine each other only through a representative.  If either or both of them do not have a representative, the college shall work with them to find a representative to conduct such cross-examination.  In the alternative, the complainant and respondent may provide written questions to the chairperson to be posed to the witness.

11.  In a case involving the CUNY Policy on Sexual Misconduct:

a)  Evidence of the mental health diagnosis and/or treatment of a party may not be introduced.

b)  Evidence of either party's prior sexual history may not be introduced except that (i) evidence of prior sexual history between complainant and respondent is admissible at any stage of the hearing, and (ii) past findings of domestic violence, dating violence, stalking, or sexual assault may be admissible in the stage of that hearing related to penalty

## Penalty Phase:

12.  If the respondent has been found responsible, then all parties may introduce evidence related to the respondent's character including any past findings of a respondents' responsibility for domestic violence, stalking, or sexual assault or any other sexual violence.  The College may introduce a copy of the respondent's previous disciplinary record; including records from any CUNY institution the respondent has attended, where applicable, provided the respondent was shown a copy of the record prior to the commencement of the hearing. The previous disciplinary record shall be submitted to the committee in a sealed envelope, bearing the respondent's signature across the seal, and shall only be opened if the respondent has been found to have committed the conduct charged.   The previous

disciplinary records, as well as documents and character evidence introduced by the respondent, the complainant, and the college shall be opened and used by the committee for dispositional purposes, i.e., to determine an appropriate penalty if the charges are sustained.  The complainant and respondent may also provide or make an impact statement.  Such evidence and impact statements shall be used by the committee only for the purpose of determining an appropriate penalty if the charges are sustained.

## Decision:

13. The committee shall deliberate in closed session. The committee shall issue a written decision, which shall be based solely on the testimony and evidence presented at the hearing and the papers filed by the parties.

14. The respondent shall be sent a copy of the faculty-student disciplinary committee's decision within seven (7) calendar days of the conclusion of the hearing, by regular mail and e-mail to the address appearing on the records of the college.  In cases involving two or more complainants or respondents, the respondent shall be sent a copy of faculty-student disciplinary committee's decision within fourteen (14) calendar days of the conclusion of the hearing. The chief student affairs officer is also encouraged to send the decision to any other e-mail address that he or she may have for the respondent. The decision shall be final subject to any appeal.  In cases involving a crime of violence or a non-forcible sex offense, as set forth in FERPA, the complainant shall simultaneously receive notice of the outcome of the faculty-student disciplinary committee's decision as it relates to the offense(s) committed against the complainant, in the same manner as notice is given to the respondent.

15.  When a disciplinary hearing results in a penalty of dismissal or suspension for one term or more, the decision is a university-wide penalty and the respondent shall be barred from admission to, or attendance at, any other unit of the university while the penalty is being served.

## Appeals:

16. A respondent or a complainant may appeal a decision of the faculty-student disciplinary committee to the president on the following grounds: (i) procedural error, (ii) newly discovered evidence that was not reasonably available at the time of the hearing, or (iii) the disproportionate nature of the penalty. The president may remand for a new hearing or may modify the penalty either by decreasing it (on an appeal by the respondent) or increasing it (on an appeal by the complainant). If the president is a party to the dispute, her/his functions with respect to an appeal shall be discharged by an official of the university to be appointed by the chancellor or her or his designee.  If the penalty after appeal to the president is one of dismissal or suspension for one term or more, a respondent or a complainant may appeal to the board committee on student affairs and special programs. The board may dispose of the appeal in the same manner as the president.

17. An appeal under this section shall be made in writing within fifteen (15) calendar days after the delivery of the decision appealed from.  This requirement may be waived in a particular case for good cause by the president or the board committee as the case may be.  Within three (3) calendar days of the receipt of any appeal, either to the president or the board committee on student affairs and special programs, the non-appealing party shall be sent a written notice of the other party's appeal. In addition, the respondent and/or the complainant shall have the opportunity to submit a written opposition to the other party's appeal within fifteen (15) calendar days of the delivery of the notice of receipt of such appeal.

18.  The president shall decide and issue a decision within fifteen (15) calendar days of receiving the appeal or within fifteen (15) calendar days of receiving papers in opposition to the appeal, whichever is longer.  The board committee shall decide and issue a decision within five (5) calendar days of the meeting at which it hears the appeal.

## Notations on Transcripts:

19.  In cases in which a respondent has been found responsible for a Clery Act reportable crime of violence, the college must place a notation on her/his transcript stating that she/he was suspended or expelled after a finding of responsibility for a code of conduct violation. In all other cases, the college must place a notation of the findings and penalty on a respondent's transcript unless a mediation agreement under subparagraph e(2) herein, the determination of the chief student affairs officer or designee under subparagraph i herein, the committee's decision under subparagraph q(13) herein, or the decision on any appeal under subparagraphs q(16) - (18) herein expressly indicate otherwise.

20.  A notation of expulsion after a respondent has been found responsible for a Clery Act reportable crime of violence shall not be removed. In all other cases, a notation of expulsion, suspension or any lesser disciplinary penalty shall be removed, as a matter of right, upon the request of the respondent to the Chief Student Affairs Officer made, four years after the conclusion of the disciplinary proceeding or one year after the conclusion of any suspension, whichever is longer. If a finding of responsibility for any violation is vacated for any reason, any such notation shall be removed.

## SECTION 15.5. ACTION BY THE BOARD OF TRUSTEES.

Notwithstanding the foregoing provisions of this article, the board of trustees reserves full power to suspend or take other appropriate action against a student or a student organization for conduct which impedes, obstructs, or interferes with the orderly and continuous administration and operation of any college, school, or units of the university in the use of its facilities or in the achievement of its purposes as an educational institution in accordance with procedures established by the board of trustees.

## SECTION 15.6. COLLEGE GOVERNANCE PLANS.

The provisions in a duly adopted college governance plan shall not be inconsistent with the provisions contained in this article.

**ARTICLE XVI STUDENT ACTIVITY FEES AND AUXILIARY ENTERPRISES**

**SECTION 16.1. STUDENT ACTIVITY FEE.**

The student activity fee is the total of the fees for student government and other student activities. Student activity fees, including student government fees collected by a college of the university shall be deposited in a college central depository and, except where earmarked by the board, allocated by a college association budget committee subject to review by the college association as required in these bylaws.

**SECTION 16.2. STUDENT ACTIVITY FEES USE - EXPENDITURE CATEGORIES.**

Student activity fee funds shall be allocated and expended only for the following purposes:

1. Extracurricular educational programs;.
2. Cultural and social activities;
3. Recreational and athletic programs;
4. Student government;
5. Publications and other media;
6. Assistance to registered student organizations;
7. Community service programs;
8. Enhancement of the college and university environment;
9. Transportation, administration and insurance related to the implementation of these activities;
10. Student services to supplement or add to those provided by the university;
11. Stipends to student leaders.

**SECTION 16.3. STUDENT GOVERNMENT FEE.**

The student government fee is that portion of the student activity fee levied by resolution of the board which has been established for the support of student government activities. The existing student government fees now in effect shall continue until changed. Student government fees shall be allocated by the duly elected student government, or each student government where more than one duly elected student government exists, for its own use and for the use of student organizations, as specified in section 15.2. of these bylaws, provided, however, that the allocation is based on a budget approved by the duly elected student government after notice and hearing, subject to the review of the college association. Where more than one duly elected student government exists, the college association shall apportion the student government fees to each student government in direct proportion to the amount collected from members of each student government.

**SECTION 16.4. STUDENT GOVERNMENT ACTIVITY DEFINED.**

a. A student government activity is any activity operated by and for the students enrolled at any unit of the university provided, (1) such activity is for the direct benefit of students enrolled at the college, (2) that participation in the activity and the benefit thereof is available to all students enrolled in the unit or student government thereof, and (3) that the activity does not contravene the laws of the city, state or nation, or the published rules, regulations, and orders of the university or the duly established college authorities.

## SECTION 16.5. COLLEGE ASSOCIATION.

a.  The college association shall have responsibility for the supervision and review over college student activity fee supported budgets. All budgets of college student activity fees, except where earmarked by the board to be allocated by another body, should be developed by a college association budget committee and recommended to the college association for review by the college association prior to expenditure. The college association shall review all college student activity fee, including student government fee allocations and expenditures for conformance with the expenditure categories defined in Section 16.2. of this article and the college association shall disapprove any allocation or expenditure it finds does not so conform, or is inappropriate, improper, or inequitable.

b.  A college association shall be considered approved for purposes of this article if it consists of thirteen (13) regular, voting members and up to six (6) alternates, its governing documents are approved by the college president and the below requirements are met. Notwithstanding the foregoing, a college association that is not separately-incorporated may have a governing board of thirteen (13) members consisting of the individuals listed in 1(i) through 1(iv) below, plus one additional administrative member and one additional faculty member, and is not required to have the audit committee referenced in 3 below:

1.  The governing board of the college association is composed of:

    (i) The college president or his/her designee as chair.

    (ii) Two administrative members and one administrative alternate, appointed by the college president.

    (iii) Two faculty members and up to two faculty alternates appointed by the college president from a panel whose size is twice the number of seats (including the alternates) to be filled and the panel is elected by the appropriate college faculty governance body.

    (iv) Six student members and up to three student alternates comprised of the student government president(s) and other elected students with the student seats allocated on a basis which will provide representation to each government, where more than one exists, as nearly as practicable in proportion to the student activity fees provided by the students from the respective constituencies.

    (v) Two independent directors appointed by the college president.  An independent director shall  be a former employee of the college or the association, a college alum, a community member, or any other individual, who, pursuant to Section 102 of the Not-for-Profit Corporations Law: (A) has not been within three years of his or her appointment to the governing board of the association, an employee of the association, CUNY or the Research Foundation of CUNY; and (B) does not have a relative who is, or has been within three years of the individual's appointment to the governing board, a key employee of the association, CUNY or the Research Foundation of CUNY; and (C) has not received, and does not have a relative who has received, in any of the three fiscal years prior to the individual's appointment to the governing board, more than $10,000 in direct compensation from the association, CUNY or the Research Foundation of CUNY (other than reimbursement for expenses reasonably incurred as a director or reasonable compensation for service as a director as permitted by the Not-for-Profit Corporations Law); and (D) is not a current employee of or does not have a substantial financial interest in, and does not have relative who is a current officer of or has a substantial financial interest in, any entity that has made payments to, or received payments from, the association, CUNY or the Research Foundation of CUNY for property or services in an amount which, in any of the three fiscal years prior to the individual's appointment to the governing board,

exceeds the lesser of $25,000 or 2% of such entity's consolidated gross revenues.  For purposes of this definition, "payment" does not include charitable contributions.

(vi)  The alternates may attend meetings of the governing board, and each shall be entitled to vote on such matters that come before the governing board to the extent that the alternate is substituting for an absent member of the same constituency.

2.   The college association structure provides a budget committee composed of members of the governing board, at least a majority of whom are students selected in accordance with section 16.5.(b)(1)(iv) of these bylaws. The budget committee shall be empowered to receive and review student activity fee budget requests and to develop a budget subject to the review of the college association. The college association may choose to not approve the budget or portions of the budget if in their opinion such items are inappropriate, improper, or inequitable. The budget shall be returned to the budget committee with the specific concerns of the college association noted for further deliberation by the budget committee and subsequent resubmittal to the college association. If the budget is not approved within thirty (30) days those portions of the budget voted upon and approved by the college association board will be allocated. The remainder shall be held until the college association and the budget committee agree.

3.   Every separately-incorporated college association shall have an audit committee consisting of the two independent directors and one student member elected by the governing board who meets the criteria for independence set forth in 16.5.(b)(1)(v)(A) through (D).  The audit committee shall oversee the accounting and financial reporting processes of the association and the audit of the association's financial statements and shall have such other duties as set forth in Section 712-a of the Not-for-Profit Corporations Law.

4.   The governing documents of the college association have been reviewed by the board's general counsel and approved by the board.

## SECTION 16.6. MANAGEMENT AND DISBURSEMENT OF FUNDS.

The college and all student activity fee allocating bodies shall employ generally accepted accounting and investment procedures in the management of all funds. All funds for the support of student activities are to be disbursed only in accordance with approved budgets and be based on written documentation. A requisition for disbursement of funds must contain two signatures; one, the signature of a person with responsibility for the program; the other the signature of an approved representative of the allocating body.

## SECTION 16.7. REVENUES.

All revenues generated by student activities funded through student activity fees shall be placed in a college central depository subject to the control of the allocating body. The application of such revenues to the account of the income generating organization shall require the specific authorization of the allocating body.

## SECTION 16.8. FISCAL ACCOUNTABILITY HANDBOOK.

The chancellor or his/her designee shall promulgate regulations in a fiscal accountability handbook, to regulate all aspects of the collection, deposit, financial disclosure, accounting procedures, financial payments, documentation, contracts, travel vouchers, investments and surpluses of student activity fees

and all other procedural and documentary aspects necessary, as determined by the chancellor or his/her designee to protect the integrity and accountability of all student activity fee funds.

## SECTION 16.9. COLLEGE PURPOSES FUND.

a.  A college purposes fund may be established at each college and shall be allocated by the college president. This fund may have up to twenty-five (25) percent of the unearmarked portion of the student activity fee earmarked to it by resolution of the board, upon the presentation to the board of a list of activities that may be properly funded by student activity fees that are deemed essential by the college president.

b.  Expenditures from the college purposes fund shall be subject to full disclosure under section 16.13. of these bylaws.

c.  Referenda of the student body with respect to the use and amount of the college purposes fund shall be permitted under the procedures and requirements of section 16.12. of these bylaws.

## SECTION 16.10. AUXILIARY ENTERPRISE CORPORATION.

a.  The auxiliary enterprise corporation shall have responsibility for the oversight, supervision and review over college auxiliary enterprises. All budgets of auxiliary enterprise funds and all contracts for auxiliary enterprises shall be reviewed by the auxiliary enterprise corporation prior to expenditure or execution.

b.  The auxiliary enterprise corporation shall be considered approved for the purposes of this article if it consists of at least eleven (11) members, its governing documents are approved by the college president and the following requirements are met:

1. The governing board is composed of the college president or his/her designee as chair, plus an equal number of students and the combined total of faculty and administrative members, and two independent directors.

2. The administrative members are appointed by the college president.

3. The faculty members are appointed by the college president from a panel whose size is twice the number of seats to be filled and the panel is elected by the appropriate college faculty governance body.

4. The student members are the student government president(s) and other elected students and the student seats are allocated on a basis which will provide representation to each government, where more than one exists, as nearly as practicable, in proportion to the student enrollment by headcount from the respective constituencies.

5. The independent directors are appointed by the college president.  An independent director shall be a former employee of the college or the auxiliary enterprises corporation, a college alum, a community member, or any other individual, who, pursuant to Section 102 of the Not-for-Profit Corporations Law:  (A) has not been within three years of his or her appointment to the governing board of the auxiliary enterprises corporation, an employee of the auxiliary enterprises corporation, CUNY or the Research Foundation of CUNY; and (B) does not have a relative who is, or has been within three years of the individual's appointment to the governing board, a key employee of the

auxiliary enterprises corporation, CUNY or the Research Foundation of CUNY; and (C) has not received, and does not have a relative who has received, in any of the three fiscal years prior to the individual's appointment to the governing board, more than $10,000 in direct compensation from the auxiliary enterprises corporation, CUNY or the Research Foundation of CUNY (other than reimbursement for expenses reasonably incurred as a director or reasonable compensation for service as a director as permitted by the Not-for-Profit Corporations Law); and (D) is not a current employee of or does not have a substantial financial interest in, and does not have relative who is a current officer of or has a substantial financial interest in, any entity that has made payments to, or received payments from, the auxiliary enterprises corporation, CUNY or the Research Foundation of CUNY for property or services in an amount which, in any of the three fiscal years prior to the individual's appointment to the governing board, exceeds the lesser of $25,000 or 2% of such entity's consolidated gross revenues.  For purposes of this definition, "payment" does not include charitable contributions.

6. The auxiliary enterprises corporation shall have an audit committee consisting of the two independent directors and one student member elected by the governing board who meets the criteria for independence set forth in 16.10.(b)(5)(A) through (D) .  The audit committee shall oversee the accounting and financial reporting processes of the auxiliary enterprises corporation and the audit of the auxiliary enterprises corporation's financial statements and shall have such other duties as set forth in Section 712-a of the Not-for-Profit Corporations Law.

7. The governing documents of the auxiliary enterprise corporation have been reviewed by the board's general counsel and approved by the board.

## SECTION 16.11. THE REVIEW AUTHORITY OF COLLEGE PRESIDENTS OVER STUDENT ACTIVITY FEE ALLOCATING BODIES AND AUXILIARY ENTERPRISE CORPORATIONS.

a.   The president of the college shall have the authority to disapprove any student activity fee, including student government fee, or auxiliary enterprise allocation or expenditure, which in his or her opinion contravenes the laws of the city, state, or nation or any bylaw or policy of the university or any policy, regulation, or order of the college. If the college president chooses to disapprove an allocation or expenditure, he or she shall consult with the general counsel and vice chancellor for legal affairs and thereafter communicate his/her decision to the allocating body or auxiliary enterprise board.

b.   The president of the college shall have the authority to suspend and send back for further review any student activity fee, including student government fee, allocation or expenditure which in his or her opinion is not within the expenditure categories defined in section 16.2. of this article. The college association shall, within ten (10) days of receiving a proposed allocation or expenditure for further review, study it and make a recommendation to the president with respect to it. The college president shall thereafter consider the recommendation, shall consult with the general counsel and vice chancellor for legal affairs, and thereafter communicate his/her final decision to the allocating body as to whether the allocation or expenditure is disapproved.

c.   The chancellor or his/her designee shall have the same review authority with respect to university student activity fees that the college president has with respect to college student activity fees.

d.   All disapprovals exercised under this section shall be filed with the general counsel and vice chancellor for legal affairs.

e.  Recipients of extramural student activity fees shall present an annual report to the chancellor for the appropriate board committee detailing the activities, benefits and finances of the extramural body as they pertain to the colleges where students are paying an extramural fee.

## SECTION 16.12. REFERENDA.

A referendum proposing changes in the student activity fee shall be initiated by a petition of at least ten (10) percent of the appropriate student body and voted upon in conjunction with student government elections.

a.  Where a referendum seeks to earmark student activity fees for a specific purpose or organization without changing the total student activity fee, the results of the referendum shall be sent to the college association for implementation.

b.  Where a referendum seeks to earmark student activity fees for a specific purpose or organization by changing the total student activity fee, the results of such referendum shall be sent to the board by the president of the college together with his/her recommendation.

c.  At the initiation of a petition of at least ten (10) percent of the appropriate student body, the college president may schedule a student referendum at a convenient time other than in conjunction with student government elections.

d.  Where the referendum seeks to affect the use or amount of student activity fees in the college purposes fund, the results of the referendum shall be sent to the board by the college president together with his/her recommendation.

## SECTION 16.13. DISCLOSURE.

a.  The college president shall be responsible for the full disclosure to each of the student governments of the college of all financial information with respect to student activity fees.

b.  The student governments shall be responsible for the full disclosure to their constituents of all financial information with respect to student government fees.

c.  The student activity fee allocating bodies shall be responsible for the full disclosure of all financial information to its membership, to the college and to the student governments with respect to all of its activities.

d.  The auxiliary enterprise corporation shall be responsible for the full disclosure of all financial information to its membership, to the college and to the student governments with respect to auxiliary enterprises.

e.  For purposes of the foregoing paragraphs, full disclosure shall mean the presentation each semester of written financial statements which shall include, but need not be limited to, the source of all fee income by constituency, income from other sources creditable to student activity fee accounts, disbursements, transfers, past reserves, surplus accounts, contingency and stabilization funds. Certified independent audits performed by a public auditing firm shall be conducted at least once each year.

## SECTION 16.14. STIPENDS.

The payment of stipends to student leaders is permitted only within those time limits and amounts authorized by the board.

# ARTICLE XVII DEFINITIONS

## SECTION 17.1.

The following definitions shall apply in these bylaws:

a. **"Board"** means the board of trustees of the city university of New York.

b. **"Department"** means an instructional department of a college or a Ph.D. program in the graduate school and university center; if the instructional work of the college is organized into divisions or programs, it shall mean a division or program.

c. **"Department chairperson"** means a department head as such title is used in a community college, a program director as such title is used in the school of professional studies or a community college, or an executive officer as such title is used in the graduate school.

d. **"Tenure"** is the right of a person to hold his/her position during good behavior and efficient and competent service; and not to be removed therefrom except in accordance with applicable contractual provisions and law.

e. **"Senior college"** means a four-year college, the graduate school and university center (and all components thereof), and the law school.

f. **"Community college"** means a two-year college offering associate degrees.

g. **"College" or "Educational unit"** shall mean a senior college or a community college.

h. **"President"** includes the president of a college, or anyone acting in such capacity as the sense of the provision may be appropriate, including the deans of the law school, the school of professional studies and the graduate school of journalism.

i. **"Promotion"** is the advancement from a title on the permanent instructional staff to another title on the permanent instructional staff.